UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA SOUTHEAST CONNECTION, LLC,

    Plaintiff,

v.                                    Case No. 8:16-cv-681-T-17TBM

0.074 ACRES OF LAND, MORE OR LESS, IN POLK COUNTY, FLORIDA, and THREE GEE DEE COMPANY,

    Defendants.
_____/

**ORDER**

    Before the Court is Florida Southeast Connection, LLC's (FSC) Motion for Preliminary Injunction for Immediate Possession filed pursuant to Federal Rule of Civil Procedure 65 and Middle District of Florida Local Rule 4.06, which was referred to the undersigned for disposition (Doc. # 9). FSC seeks a preliminary injunction granting it immediate possession and use of the Easements in this case for pre-installation activities to begin as soon as possible so that construction can begin by June 1, 2016. Similar motions have been filed in the related or companion cases.

**I.    BACKGROUND**

Pursuant to the Natural Gas Act (NGA), 15 U.S.C. § 717f, the Federal Energy Regulatory Commission (FERC) issued an "Order Issuing Certificates and Approving Abandonment" on February 2, 2016.[1] That order issued FSC a certificate of public convenience and necessity (FERC Certificate) authorizing it to construct and operate the Florida Southeast Connection Project (the FSC Project or Project). The Project encompasses approximately 126 miles of new pipeline, and related facilities that will transport natural gas in interstate commerce from central Florida to Florida Power & Light Company's (FPL) Martin Clean Energy Center in Martin County, Florida (the Martin Clean Energy Center).

If FSC, as the holder of a FERC Certificate, "cannot acquire by contract, or is unable to agree with the owner of the property to the compensation to be paid," it may acquire the necessary right-of-way (including land or other property necessary for the proper operation of the pipeline) "by the exercise of the right of eminent domain in" the United States

---

[1] As a public record issued and maintained by FERC, this Court takes judicial notice of the FERC Certificate, the Final Environmental Impact Statement (FEIS) approved and adopted by FERC, and all other records of the FERC proceedings relating to the Project under Federal Rule of Evidence 201. *Transmission Agency of N. Cal. V. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n.3 (9th Cir. 2002).

district court in which the property is located. 15 U.S.C. § 717f(h).

Over the past two years, FSC purchased from landowners approximately 87% of the easement interests necessary for the Project. However, FSC has been unable to purchase all of the required easement interests through voluntary acquisitions. As a result, FSC filed this action pursuant to 15 U.S.C. § 717f(h), and Rule 71.1, Fed. R. Civ. P., to condemn the right-of-way and other property interests identified in the Complaint (the Easements).[2] FSC has filed a number of related cases to acquire other necessary easement interests in this District and the Southern District of Florida.

In such NGA condemnation cases, the district court's role is limited to ordering "condemnation of property in accord with a facially valid certificate." *Tenn. Gas Pipeline Co. v. 104 Acres of Land More or Less, in Providence Cty. of the State of R.I.*, 749 F. Supp. 427, 430 (D.R.I. 1990)(citing *Williams Nat. Gas Co. v. Okla. City*, 890 F.2d 255, 262 (10th Cir. 1989)). In other words, "[t]he District Court's role is to evaluate the scope of the certificate and to order condemnation of property as authorized in the certificate."

---

[2] Service of process was effected pursuant to Federal Rule of Civil Procedure 71.1(d)(3). (Doc. # 12).

*Id.* at 430; *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate & Maintain a 24-Inch Pipeline Across Props. in Shenandoah Cty., Va.*, No. 5:07cv04009, 2008 WL 2439889, at *2 (W.D. Va. June 9, 2008).

## II.   **RELATED CASE PRECEDENT**

"[O]nce a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction." *E. Tenn. Nat. Gas Co. v. Sage* (*Sage*), 361 F.3d 808, 828 (4th Cir. 2004). And, FSC is

> entitled to a preliminary injunction if it show[s]: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest."

*Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015) (quoting *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005)). FSC satisfies each of the elements and, therefore, is entitled to the injunction it seeks.

Granting such injunctions is consistent with well-settled law. Courts throughout the country have granted

preliminary injunctive relief when a natural gas pipeline company holding a valid FERC Certificate, and which satisfied the standard for injunctive relief, sought immediate possession of the necessary right-of-way interests. *See, e.g.*, *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Twp., York Cty. Penn., Located on Tax ID No. 440002800150000000 Owned by Dwyane P. Brown & Ann M. Brown*, 768 F.3d 300, 304 (3d Cir. 2014) (reversing district court and granting immediate possession of the easement, and noting, "a certificate of public convenience and necessity gives its holder the ability to obtain automatically the necessary right of way through eminent domain, with the only open issue being the compensation the landowner defendant will receive in return for the easement."); *Sage*, 361 F.3d at 828.[3]

---

[3] *See also, e.g.*, *Constitution Pipeline Co., LLC v. A Permanent Easement for 1.29 Acres, & Temp. Easements for 1.58 Acres, in Jackson Twp., Susquehanna Cty., Penn. Tax Parcel No. 092.00-2,056.00,000*, No. 3:14-2453, 2015 WL 1219646, at *4 (M.D. Pa. Mar. 17, 2015); *Constitution Pipeline Co., LLC v. A Permanent Easement for 2.40 Acres & Temp. Easements for 3.13 Acres in Davenport, Del. Cty., N.Y.*, No. 3:14-cv-2046(NAM/RFT), 2015 WL 1638211, at *6 (N.D.N.Y. Feb. 24, 2015); *Columbia Gas Transmission LLC v. 0.85 Acres, More or Less, in Harford Cty., Md.*, No. WDQ-14-2288, 2014 WL 4471541, at *8 (D. Md. Sept. 8, 2014); *Nw. Pipeline Corp. v. 20' by 1,430' Pipeline Right of Way Easement 50' x 1,560' Temp. Staging Area*, No. CS-01-0246-FVS, 197 F. Supp. 2d 1241, 1246 (E.D. Wash. 2002); *Tenn. Gas Pipeline Co. v. New England*

## III. **FINDINGS ON THE NECESSARY ELEMENTS FOR A PRELIMINARY INJUNCTION**

### A. **FSC Has Established a Substantial Likelihood of Success on the Merits**

FSC has demonstrated it meets the requirements of 15 U.S.C. § 717f(h) necessary to exercise the federal power of eminent domain: (1) FSC holds a certificate of public convenience and necessity from FERC for the Project; (2) the Easements sought to be acquired are authorized by the Certificate; and (3) FSC is unable to acquire the Easements by contract, or agree with the owner of the property on the compensation to be paid for those interests. *E. Tenn. Nat. Gas, LLC v. 1.28 Acres in Smyth Cty., Va.* (E. Tenn. Nat. Gas), Nos. 1:06-CV-00022, 1:06-CV-00028, 1:06-CV-00029, 1:06-CV-00036, 1:06-CV-00037, 1:06-CV-00044, 2006 WL 1133874, at *10, 13 (W.D. Va. Apr. 26, 2006) ("[I]t is undisputed that ETNG has been granted a certificate of public convenience and necessity from the FERC. As a certificate holder, the Act grants ETNG the substantive right to condemn the property as approved by the FERC."); *Columbia Gas Transmission, LLC v.*

---

*Power, CTL, Inc.*, 6 F. Supp. 2d 102, 104 (D. Mass. 1998); *Kern River Gas Transmission v. Clark County, Nev.*, 757 F. Supp. 1110, 1116-17 (D. Nev. 1990); *N. Border Pipeline Co. v. 127.79 Acres of Land, More or Less in Williams Cty., N.D.*, 520 F. Supp. 170, 172-73 (D.N.D. 1981).

6

*370.393 Acres, More or Less in, Balt. Cty., Md.*, No. 1:14-0469-RDB, No. 1:14-0469-RDB, 2014 WL 5092880, at *2 (D. Md. Oct. 9, 2014) ("After obtaining the FERC Certificate of public convenience and necessity, natural gas pipeline companies are granted the authority to condemn property for the purpose of constructing pipeline."); *1.01 Acres, More or Less in Penn Twp., York Cty. Penn., Located on Tax ID No. 440002800150000000 Owned by Dwyane P. Brown & Ann M. Brown*, 768 F.3d at 315 ("This is not a 'normal' preliminary injunction, where the merits await another day. In those situations, the probability of success is not a certainty such that weighing the other factors is paramount. Here, there is no remaining merits issue; we have ruled that Columbia has the right to the easements by eminent domain.").

As noted earlier, the Court acknowledges that its examination here is limited because the findings in the FERC Certificate—including the determination that the Project is a matter of public convenience and necessity, and that the lands along the Project path are necessary for use in the Project—are conclusive in this condemnation proceeding, and cannot be collaterally attacked here. *E. Tenn. Nat. Gas*, 2006 WL 1133874, at *13 ("The defendants in these cases have introduced much evidence which attempts to call into question

the propriety of the FERC's issuance of the Certificate and the propriety of the approved route of the Jewell Ridge Lateral pipeline. The defendants, however, cannot use these cases to engage in an appellate review of the propriety of this project."); *Guardian Pipeline, LLC v. 529.42 Acres of Land, More or Less, in Kendall & McHenry Ctys., Ill.*, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002) ("The jurisdiction of [a district] court is limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that certificate").

    **B.**    **FSC Will Suffer Irreparable Harm if an Injunction is Not Issued, and in Turn FSC's Customers and the Public Will Suffer Harm**

FSC has demonstrated a likelihood of irreparable harm if a preliminary injunction is not issued.

    **1.**    **The public need will not be timely addressed if an injunction is not issued**

Both FERC and the Florida Public Service Commission determined that there is a public need for the natural gas that the Project will provide. FERC Certificate at ¶¶ 85-87; Declaration of Jay Brandli (Brandli Dec.) at ¶ 19.

A delay in obtaining access to the Easements would delay the entire Project and cause FSC to significantly risk failing to meet its May 1, 2017, in-service deadline. Brandli Dec. at

8

¶ 17. If FSC does not complete construction by the May 1, 2017, in-service date, it will be unable to timely transport price-competitive, natural gas to the Martin Clean Energy Center to help meet the growing demand of natural gas for electric generation, distribution, and end use markets in Florida. *Id.* at ¶ 19; FERC Certificate at ¶ 9. In particular, if the May 1, 2017, in-service date is not met, there will likely be insufficient natural gas capacity to meet the growing electricity needs of Floridians, which means oil would be utilized as an alternate fuel, contributing to increased costs to Florida customers and detrimental air emissions since natural gas is a lower emissions fuel than oil. Brandli Dec. at ¶ 19; FERC Certificate at ¶¶ 85-87.

### 2. **FSC will suffer irreparable harm if an injunction is not issued**

FSC has demonstrated it will suffer irreparable harm if immediate access and possession is not granted. Other federal courts have recognized the irreparable harm that results from the inefficiencies and added costs incurred when pipeline construction is halted, or when crews must move around certain parcels where the necessary easements have not been secured. In *Sage*, the Fourth Circuit deemed the harm irreparable upon recognizing that:

> [c]onstructing a ninety-four-mile pipeline is a complex project that can only progress in phases. Certain portions of the project have to be completed before construction can begin on other portions. . . . [A]ny single parcel has the potential of holding up the entire project. . . . [T]o require ETNG to build up to a parcel of land it does not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient.

*Sage*, 361 F.3d at 828-29 (original alterations, internal quotation marks, and citations omitted); *see also, e.g.*, *0.85 Acres, More or Less, in Harford Cty., Md.*, 2014 WL 4471541, at *6 (finding that undue delay and costs in construction constituted irreparable harm); *Tenn. Gas Pipeline Co. v. 0.018 Acres of Land in Sussex Cty. N.J.*, No. 10-4465(JLL), 2010 WL 3883260, at *3 (D.N.J. Sept. 28, 2010) (determining that a natural gas company would suffer irreparable harm from a move around because "working around one small property is likely to [be] very difficult and result in large additional construction costs . . . [which] would not be able to be recovered"); *N. Border Pipeline Co. v. 64.111 Acres of Land, More or Less, in Will Cty., Ill.*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (determining that construction would be delayed unless the pipeline company was granted immediate possession, resulting in irreparable harm because the increased construction costs could not be recovered from

defendants); *Guardian Pipeline, L.L.C. v. 295.49 Acres of Land, More or Less, in Brown Cty., Calumet Cty., Dodge Cty., Fond du Lac Cty., & Outagamie Cty., Wis.*, Nos. 08-C-0028, 08-C-54, 08-C-29, 08-C-30, 2008 WL 1751358, at *22 (E.D. Wis. Apr. 11, 2008) ("It is not economically feasible to skip over properties scattered at various locations along the route and then come back to them at a later time. To do so would require Guardian to incur hundreds of thousands of dollars of expenses to move the large amount of material, heavy equipment, and personnel from property to property as they become available.").

The same is true of the Project here. Without a preliminary injunction awarding immediate possession, FSC will suffer the same wasteful and inefficient consequences recognized by *Sage* and many other cases resulting from having to halt the construction or move around properties where necessary easements have not yet been obtained. Brandli Dec. at ¶¶ 14-18. And, once construction begins, FSC will be liable for any delays that occur if a contractor is unable to access a property in sequential order. *Id.* at ¶ 18. In that event, FSC could incur acceleration costs to recover lost time, estimated to be $45,000 or more per day, as well as mobilization costs of up to $150,000 per crew. *Id.* The number

of composite crews required would be proportional to the accumulated delay. *Id.* If there is a move around of a property, FSC must pay the contractor move-around costs. *Id.* Move-around costs will likely range between $400,000 and $500,000 per full spread move-around. *Id.*

Further, for some portions of the Project, the pipeline will be installed by the HDD method. *Id.* at ¶ 12. HDD installation requires a subsurface crossing of multiple properties with a single entry and exit point at each end of the spread. *Id.* Since the use of the HDD method generally involves crossing multiple properties across the FERC-approved route, FSC must have simultaneous access to all of those properties to begin use of the HDD method. *Id.* If FSC does not have contiguous access to perform the HDD activities along the Project route, it will have to relocate work to a different location. *Id.* This would cause significant delay, for which FSC would be liable. *Id.* at ¶ 18.

In addition, construction related uncertainties require that FSC have immediate possession to meet its in-service deadline. *Id.* at ¶ 17. Weather conditions, unexpected field conditions, and other construction challenges, should they arise, would require additional time to complete the Project,

further increasing the risk of missing the in-service deadline if immediate possession is not ordered. *Id.*

In looking at increased costs and delays, other federal courts have found such harm in natural gas cases constitute the type of irreparable harms that warrants injunctive relief. In *Sage*, for example, the Fourth Circuit determined that a natural gas company would suffer irreparable harm without a preliminary injunction because the pipeline construction would suffer "'undue delay' and that this delay would cause 'significant financial harm to both [the natural gas company] and some of its putative customers.'" 361 F.3d at 828; *see also A Permanent Easement for 2.40 Acres & Temp. Easements for 3.13 Acres in Davenport, Del. Cty., N.Y.*, 2015 WL 1638211, at *5 (holding that the plaintiff natural gas company "demonstrated it will sustain immediate and irreparable harm in the absence of the injunction" relying on the gas company's affidavit that "explain[ed] in substantial detail the construction schedule, the FERC requirements prior to construction, and other restrictions on construction, as well as potential monetary losses.").

Here, FSC will suffer the same irreparable harm if possession is delayed. If FSC is not granted possession and use until all of the related condemnation actions are

13

ultimately tried to completion, it will miss the Project's in-service deadline. Brandli Dec. at ¶ 18; *Transcon. Gas Pipe Line Co., LLC v. Permanent Easement Totaling 2.322 Acres, More or Less, & Temp. Easements Totaling 3.209 Acres, More or Less, Over a Parcel of Land in Brunswick Cty., Va. of Approximately 83.00 Acres in Size*, No. 3:14-cv-00400-HEH, 2014 WL 4365476, at *5-6 (E.D. Va. Sept. 2, 2014) (determining that failing to meet an in-service deadline was sufficient to establish irreparable harm); *see also Sage*, 361 F.3d at 828 (recognizing that "[s]cheduling and conducting those hearings . . . 'will obviously take an extended period of time.'"). To meet its in-service deadline of May 1, 2017, recognized by FERC, FSC must obtain immediate use and possession of the necessary easements. Brandli Dec. at ¶ 17; FERC Certificate at ¶ 31.

### C. The Threatened Injury to FSC Outweighs Whatever Damage, if Any, the Proposed Injunction Might Cause the Defendants

The Defendants will not be harmed if the injunction is entered. The Defendants' monetary relief is a matter of timing, as the property at issue "would still be disturbed, albeit at a later time, if just compensation was determined first." *Sage*, 361 F.3d at 829. "[T]he only 'harm' to Defendants is that of compensation – an issue that will not

change depending on whether [the court] grant[s] or den[ies] the injunction." *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Transmission Pipeline Across Props. in Greene Cty., Va., Owned by Michael E. Walker, Alan D. Ward, Judge Norman K. Moon Norma J. Caron-Ward, Ronne Edward Lawson, Doris Jean Lawson, David Roach, Donna L. Roach, Leonidas M. Schwartz, Roslyn J. Schwartz, Winston D. Schwartz, Alice W. Vining and George J. Vining III*, No. 3:07cv00028, 2007 WL 2287673, at *4 (W.D. Va. July 20, 2007); *0.018 acre Acres of Land in Sussex Cty., N.J.*, 2010 WL 3883260, at *3 ("The Court is sympathetic to the [defendant's] personal situation and understands that this project will be a disruption for her family at this challenging personal time. However, no evidence has been submitted to support the conclusion that delaying access to the property will alleviate this disruption.").

Additionally, this Court will condition the preliminary injunction on FSC posting a security bond in the amount of $5,000. That bond will blunt or negate any potential claim of irreparable harm to Defendants. *Sage*, 361 F.3d at 829.

**D.   Issuing the Injunction Furthers the Public Interest**

The FERC Certificate and the purpose of the NGA demonstrate that the public interest weighs in favor of

15

granting FSC immediate possession of the Easements. "Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices." *Sage*, 361 F.3d at 830; *0.018 acre Acres of Land in Sussex Cty., N.J.*, 2010 WL 3883260, at *3 ("With regard to the public interest factor, the Court finds that this prong is easily met under the circumstances of this case. By granting the certificate, FERC made a determination that the pipeline is necessary and in the public interest. This conclusion was reached after an extensive administrative process that weighed the harms to the public, including many individual homeowners['] objections, against the need for the pipeline.").

FERC made that same public interest determination here when it issued the FERC Certificate to FSC. FERC found that the two existing pipelines are either fully or nearly fully subscribed. FERC Certificate at ¶ 74. It agreed with the Florida Public Service Commission's findings of public need based on the demand for natural gas for natural gas-fired power plants, and recognized that even "[t]he expansion of existing pipelines in Florida will not satisfy the identified need of a new transportation option." *Id.* at ¶¶ 85-87.

16

Further, a delay in the in-service date will harm FSC's customer, FPL, and in turn, numerous members of the public who are residential and commercial customers of this public utility.

Granting FSC immediate possession of these easements has additional public benefits. Supplying natural gas for clean energy production is in the public interest. *See Sage*, 361 F.3d at 830 ("The project serves the public interest because, among other things, it will bring natural gas to portions of southwest Virginia for the first time. This will make gas available to consumers, and it will help in the efforts of local communities to attract much-needed new business. On a larger scale, the pipeline will make gas available for electric power generation plants."); *E. Tenn. Nat. Gas*, 2006 WL 1133874, at *14 ("[T]here is a substantial public interest at stake in this case – the need to capture and supply as much natural gas to the market as soon as possible.").

Additionally, FERC determined that "the FSC Project would benefit the state and local economies by creating a short-term stimulus to the affected areas through payroll expenditures, local purchase of consumables and project-specific materials, and sales tax." FEIS at § 3.10.3.7. FSC anticipates that the Project will hire up to 500 construction

17

workers for the job. *Id.* at § 3.10.3.1. FSC estimates that between $3.6 million and $7.2 million of its total payroll on the project would be received by local workers. *Id.* at § 3.10.3.7. Additionally, FSC estimates that another $91.2 million would be spent locally on consumables and project-specific materials. *Id.* Postponing these benefits is not in the public interest. *See Sage*, 361 F.3d at 829 ("[D]elay in construction of the pipeline would hinder economic development efforts in several Virginia counties."). Thus, the public interest is benefited by the issuance of an injunction permitting FSC to move forward with the Project.

**IV. CONCLUSION**

Weighing the relevant factors, the Court finds that FSC is entitled to a preliminary injunction granting immediate access to, and possession of, the Easements described in Composite Exhibit 3 to the Complaint.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1. FSC's Motion for Preliminary Injunction for Immediate Possession (Doc. # 5) is GRANTED.
2. Upon FSC posting a proper security bond with the Clerk of this Court in the amount of $5,000, the following shall occur:

18

    a. FSC shall have immediate access to, and possession of, the Easements described in Composite Exhibit 3 to the Complaint; and

    b. FSC may immediately begin pre-installation activities so that construction-related activities can commence by June 1, 2016, for the purposes of constructing the Project's pipelines and related facilities at the Easements described in Composite Exhibit 3 to the Complaint.

3. All pre-installation and construction-related activities shall be consistent with the Easements acquired by FSC and obligations agreed to by FSC as set forth in Composite Exhibit 3 to the Complaint, the FERC Certificate, and all other required regulatory permits.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>11th</u> day of May, 2016.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE